[Crim. No. 8667.   Second Dist., Div. Two.   July 29, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT FROELICH. Defendant and Appellant.

Patrick Coleman for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

FOX, P. J.—Defendant was convicted of manslaughter (Pen. Code, § 192, subd. 3(a)) in that on February 17, 1962, he did wilfully and unlawfully, but without malice, kill Nan Bonner Malloy while engaged in driving a vehicle in the commission of an unlawful act not amounting to a felony; to wit, driving to the left of double lines, in violation of section 21460, subdivision (a), Vehicle Code, with gross negligence.   He has appealed from the order denying his

motion for a new trial, the judgment of conviction and order imposing probation.

A collision occurred a little after midnight on Beverly Glen Boulevard between a northbound car being driven by defendant and a southbound car being operated by Roger Malloy, which resulted in the death of Mrs. Malloy. The accident happened a short distance north of Olympic and approximately in the area where Beverly Glen curves to the right. There was testimony indicating that defendant was driving at approximately 60 miles per hour and that when he reached this curve his car continued on "in the same direction" (north) which carried it across the double line resulting in a head-on collision with the Malloy car which was traveling south in the center lane at a normal speed. A police officer, experienced in investigating accidents, observed 40 feet of left-side centrifugal type skid marks made by defendant's car as it rounded the curve. In his opinion the car would have had to be traveling at a fairly high rate of speed when it went into the curve to leave that type of skid marks. These skid marks crossed the double line and indicated the point of impact was 4 or 5 feet to the left of the double line and in the southbound lane. This, according to the officer, would put both front wheels of defendant's car over the double line. It was established both by the odor of an alcoholic beverage on his breath and by scientific tests that defendant had been drinking. There were no skid marks indicating that the Malloy car had left its lane of travel prior to the impact.

Defendant was thoroughly familiar with Beverly Glen Boulevard, having lived on it for eight years. He and his wife were returning home from a social evening out. Defendant testified he had only had two scotch and sodas during the evening. Defendant estimated his speed at 30 to 35 miles per hour on Beverly Glen. Both he and his wife were injured in the accident as was Mr. Malloy.

Defendant's sole ground for reversal is that the court erred in refusing to give his requested "instruction re crossing the double white line in case of sudden peril." His proposed instruction reads: "You are instructed that it is not unlawful for a person operating a motor vehicle to drive that motor vehicle over and to the left of double white lines in a roadway where the driver of the vehicle does so when confronted with a sudden emergency and discovers himself in sudden peril."

Defendant's theory on appeal is that he "had swerved to

avoid what appeared, under the circumstances, a head on collision on his side of the roadway, and in so doing had crossed over the double white lines . . .''; that, in that event, there would have been no violation of section 21460, subdivision (a), and therefore no unlawful act causing the death of Mrs. Malloy. If there had been evidence to support defendant's initial premise there might well be merit in his position. Actually, however, his premise is entirely synthetic for there is no testimony that defendant swerved to avoid a collision on his side of the road and by reason thereof crossed over the double white line. Here is his own testimony as to what happened: ''. . . And as I came into the curve, the first curve that is shown here on the map I started into the curve, I became aware of a car bearing across the white line into my lane of traffic. My first reaction—I double drive, using both feet in driving, one foot on the brake and one on the accelerator. I am positive I applied my brakes, how hard I don't know, but I applied my brakes. The car started into a skid. Well, learning to drive in the East where there is snow I know that when I start to skid to the left I turn my wheels to the left, which I did. And that is about the extent of it.''

On cross-examination defendant was shown a statement which he said was ''for the insurance company'' in which he gave this account of the collision: ''It was as I started into the curve that I observed a 1958 Ford crossing over into my lane of traffic. *Before I could brake or do anything to avoid the collision* we had met.'' (Italics added.) In an attempt to explain the last quoted statement defendant testified: ''It was before I could do any kind of countermeasure, I think, is what I meant there rather than before I could apply my brakes. . . .'' It is thus clear that neither on his direct examination, in his extrajudicial statement, nor in his attempted explanation on cross-examination does defendant make any statement or intimate that he swerved his car to avoid a collision on his side of the road, and in so doing crossed over the double white line. There being no evidence to support the requested instruction it was, of course, not error to refuse it.

Since there is no appeal from an order denying a motion for a new trial the purported appeal therefrom is dismissed. The judgment of conviction and order imposing probation are affirmed.

Ashburn, J., and Herndon, J., concurred.